# JAMES L. FASH

## v.

# ANSON BLAKE.

1. CONVEYANCES—*their requisites.* Many of the forms at one time considered indispensable in the conveyance of lands, are now, in a great measure disused, and any writing under seal plainly evincing an intention to convey the fee in land will be adjudged to have that effect.

2. So where as instrument set forth that the grantor doth "hereby assign, transfer, and set over unto" the grantee "all my right, title, claim and demand to a tract of land," describing it, it was held to be an operative conveyance carrying the fee in the land.

3. SAME—*proof of the execution thereof.* The execution of a deed which has been insufficiently acknowledged, may be proven by showing the subscribing witnesses, if there be any, to be dead or beyond the limits of the State, and by proving the hand-writing of the grantor.

4. PROOF OF HAND-WRITING—*degree of . acquaintance with it required.* Where a witness can not swear positively that he has seen a party write, whose name appears to an instrument, but believes he has, and believes he knows his hand-writing, and that the instrument produced was signed by him, this is strong persuasive evidence to a jury to prove the signature.

5. WITNESS—*competency—interest.* In ejectment, one is not rendered incompetent to testify in behalf of the plaintiff upon a question relating to a part of the premises, merely because his deed with covenant of warranty for another portion of the premises, forms one of the links in the plaintiff's chain of title.

6. SAME—*when question of competency should be made.* The objection to the incompetency of a witness whose testimony is taken by deposition, must be made before the trial.

7. SAME—*release to render competent.* A plaintiff in ejectment may release his grantor from the covenants of warranty in his deed, by a proper instrument in writing for such purpose, and thereby render him competent to testify in his behalf.

8. SAME—*when the interest is too remote to disqualify.* In this case it was insisted that the release of the covenantor by the plaintiff was not sufficient to render him competent, because the defendant professed to derive title under proceedings in bankruptcy against the plaintiff, and if he retained the possession as against the plaintiff, and was afterwards evicted under an outstanding paramount title, he could still recover against the covenantor

upon his covenants ; but in view of the title before the court, this interest of the covenantor was deemed too remote to disqualify him as a witness for the plaintiff.

9. EVIDENCE—*to support a claim of title to land under proceedings in bankruptcy.* Before a party can avail of proceedings in bankruptcy by which title to land is claimed, it is necessary he should produce the decree of bankruptcy, as all subsequent proceedings must have that for a basis.

APPEAL from the Circuit Court of Marshall county ; the Hon. SAMUEL L. RICHMOND, Judge, presiding.

In 1858 Anson Blake commenced an action of ejectment in the Circuit Court of Peoria county, against James L. Fash, to recover the south-east quarter of section one, in township eight, north of range seven east, situate in Peoria county. The cause was afterwards removed into the Circuit Court of Marshall county, upon change of venue.

Upon the trial, the plaintiff, after having given in evidence a patent from the United States to Simeon Dolph, bearing date May 25, 1841, for the west half of the quarter section of land in controversy, offered in evidence a deed from Dolph to Joshua Aiken, as follows :

"For value received, I Simeon Dolph, of the county of Knox, and State of Illinois, do hereby assign, transfer, and set over unto Joshua Aiken, of the county of Peoria, and State of Illinois, all my right, title, claim and demand to a tract of land purchased by me on the twelfth day of June instant, as per receiver's certificate No. 2,095, designated as the west half of the south-east quarter of section number one in township number eight north, of range number seven, east of the fourth principal meridian, situated in the district of land subject to sale at Quincy, Illinois, and request that a patent may issue to the said Joshua Aiken, his heirs or assigns.

"Witness my hand and seal this 12th day of June, 1835.

SIMEON DOLPH.    [SEAL]

Witness : P. LOTT, CHAS. W. BILLINGTON.

The defendant objected to the admission of the deed in evidence.

*First.* Because the instrument could not be operative as a conveyance, and

*Second.* Because it was insufficiently acknowledged.

To obviate the latter objection, the plaintiff proved that one of the subscribing witnesses was dead, and the other resided out of this State, and then read the depositions of Philemon Selby and Nelson Selby, to prove the signature of the grantor in the deed.

Philemon Selby stated that he did not know that he had seen Dolph write, but was pretty confident he had, a good many times. He was satisfied he had seen his hand-writing, and thought he knew it. And upon being shown the deed, the witness stated that from his acquaintance with the hand-writing of the grantor he believed the signature to be in his hand-writing.

Nelson Selby stated that he was not positive he had seen Dolph write, but thought he had, a good many times, thought there was no doubt of it, and thought he was acquainted with his hand-writing; and upon examining the deed, stated that from his knowledge of Dolph's hand-writing he had no doubt the signature was his.

The defendant still objected to the admission of the deed in evidence, contending that the witnesses by whom it was sought to prove its execution did not appear to be sufficiently acquainted with the hand-writing of the grantor, and that they had not proven his signature thereto. But the court overruled all objections and admitted the deed in evidence, the defendant excepting.

The witness by whom the death of one of the subscribing witnesses to the deed mentioned, was proven, and the non-residence of the other, was *Mark M. Aiken,* who was objected to as incompetent, upon the ground that he had executed a deed, with general warranty, to Joshua Aiken for the east half of the quarter section in controversy, the plaintiff holding,

remotely, under that conveyance. The plaintiff thereupon delivered to this witness a release, discharging him from his covenants in the deed so executed by him, and he was then permitted to testify, against the objection of the defendant, who excepted.

The plaintiff derived title to the east half of the quarter section, as follows: a patent was issued to Baptist Hardy, August 10, 1838; Hardy conveyed to Mark M. Aiken, by deed, February 19, 1834; Mark M. Aiken conveyed by warranty deed to Joshua Aiken, May 29, 1835, who then had title to the whole quarter section, which he, together with his wife, conveyed to Benjamin F. Lee, November 9, 1835. Lee conveyed the land to Henry W. Sargeant by deed of general warranty, November 13, 1837, and Sargeant and wife conveyed to Anson Blake, the plaintiff, by deed of general warranty, dated October 1, 1840.

The plaintiff, having introduced these evidences of title, offered to read the deposition of Henry W. Sargeant for the purpose of proving that a deed which the witness had made to one Ann Davis, prior to his conveyance to the plaintiff, had never been delivered, but had been destroyed. The plaintiff had given to the witness a release from his covenants in the deed to himself, but the defendant objected that the plaintiff could not release the witness, because the title of the plaintiff in the premises had been divested by virtue of certain proceedings in bankruptcy, wherein the plaintiff had been duly declared a bankrupt, on the 4th of February, 1843, and the premises sold and conveyed by the assignee in bankruptcy, to one Cockle, who had conveyed to the defendant. But the court overruled the objection and permitted the deposition to be read.

The defendant then endeavored to show title in himself by means of the proceedings in bankruptcy mentioned, the conveyance from the assignee to Cockle, and from Cockle to himself; but omitted to give in evidence the decree in bankruptcy. The deed from the assignee to Cockle was excluded.

The jury returned a verdict for the plaintiff; a new trial was refused, and judgment entered upon the verdict.

The defendant thereupon took this appeal, and the questions presented, are :

*First.* Was the instrument from Dolph to Joshua Aiken, operative as a conveyance ?

*Second.* Was its execution sufficiently proven ? Was Mark M. Aiken a competent witness, and was Sargeant made so by the release of the plaintiff ? and

*Third.* Was it essential, to enable the defendant to avail himself of the proceedings in Bankruptcy, that he should have given the decree in bankruptcy in evidence ?

Messrs. McCoy and WILLIAMSON, for the appellant.

Messrs. JOHNSON and HOPKINS, and LELAND and BLANCHARD, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court :

The objection that the deed of Simeon Dolph to Joshua Aiken was not an operative conveyance sufficient to convey the fee in the land described in it, we do not think well taken. Many of the forms at one time considered indispensable in the conveyance of lands, are now in a great measure disused and any writing under seal plainly evincing an intention to convey the fee in land will be adjudged to have that effect. It has been determined by this court that a deed of release and quit claim, containing no words of sale or conveyance, is as effectual for the purpose of transferring title to land, as a formal deed of bargain and sale. *McConnell* v. *Reed*, 4 Scam. 117. We do not consider the words "release and forever quit claim" of more significance or of greater potency in a conveyance of land than the words used in the deed from Dolph. In that deed the words used are "assign, transfer, and set over" all my right, title, claim and demand to a tract of land, &c.,

describing it. Worcester, in his valuable dictionary, defines the word assign to be, " to make over a right to another"—" to assign an estate or other property," and " transfer," delivery or conveyance of property, right or title to another. We hold, then, the deed of Dolph to Aiken, was an operative conveyance carrying the fee in the land.

The proof of its execution was made in the usual way, one of the witnesses being proved to be dead, and the other beyond the limits of the State. Testimony was taken to prove the hand-writing of the grantor, and that made a *prima facie* case, and being uncontradicted, was sufficient for the purpose. It is difficult to swear positively to the hand-writing of any person, however well known it may be. These witnesses, the Selbys, did not swear positively they had ever seen Dolph write, but believed they had, and believed they knew his hand-writing, and that the deed produced was signed by him. In the absence of any other testimony, this was strong persuasive evidence for the jury, to prove the signature of the grantor.

The next point made by appellant is, that Mark M. Aiken and Henry W. Sargeant were not competent witnesses for the plaintiff.

The facts are, that Dolph owned the west half of the south-east of one, town 8 north, range 7 west, which he conveyed to Joshua Aiken by the deed on which we have commented. One Hardy entered and purchased of the United States, the east half of the same quarter, which he conveyed to Mark M. Aiken, who conveyed by warranty deed to Joshua Aiken, who then had title to the whole quarter section. Joshua Aiken and wife conveyed the land to Benjamin F. Lee, by deed, duly acknowledged November 9, 1835. Lee conveyed the land to H. W. Sargeant, by deed of general warranty, November 13, 1837, and Sargeant and wife conveyed to Anson Blake, by deed of general warranty, dated October 1, 1840, duly acknowledged and recorded.

It will be observed that Aiken had executed no conveyance for the land in controversy, it being the west half, he, Aiken,

having conveyed the east half, consequently he could have no
interest in a controversy in relation to land with which he was
in no manner connected.   As to Sargeant, his deed to Blake is
a deed with full covenants, and for the west half, together with
other parcels, making up one-half section or three hundred
and twenty acres of land.· We do not understand why the
covenantee, Blake, could not release his covenantor by a
proper instrument in writing for such purpose, which the
release offered in evidence, is not denied to be.   The release
is for a valuable consideration, is under seal, and has been
accepted by the covenantor, and he could undoubtedly, plead
it in bar of any action which might be brought on his cove-
nants.   After his release his interest in favor of Blake could
only arise from the possibility of there being an outstanding
paramount title, which might evict the appellant in the event
of his retaining the possession, and thus leave him at liberty
to sue on the covenants, but with this title before us, this
interest seems too remote to disqualify the witness.   Besides,
the objection to the deposition on the ground of incompetency
of the witness, should have been made before the trial.
*Mosier* v. *Knox College,* 32 Ill. 155.

An objection is made to the introduction of the deed from
·Lee to Sargeant, but the character of the objection is not dis-
closed.   The record shows an acknowledgment of the deed
before a Notary Public of the City of New York, which,
though not exactly formal, is substantially in compliance with
the requirements of the statute.   It states " he acknowledged
the same to be his free act and deed for the purposes therein
mentioned.

A point is raised on the fact, though not pressed, that Sar-
geant had conveyed this land to one Ann Davis, long before
he conveyed to Blake, and the deed being in the hands of
Blake, and unrecorded, he re-delivered it to Sargeant, who,
thereupon, by advice of counsel, executed a deed to Blake,
he destroying the deed to Ann Davis.   Why this was done is
unexplained.   But if, notwithstanding the destruction of the

Davis deed, the legal title remained in her, she conveyed it to Blake, by deed, dated August 1, 1858, so that in either view, the legal title vested in Blake.

But it is insisted the legal title is out of Blake by reason of certain proceedings in bankruptcy by which he was declared a bankrupt, and this land sold by his assignee to John Cockle, and by him conveyed to appellant.

Before a party can avail of proceedings in bankruptcy, by which title to land is claimed, it is necessary he should produce the decree of bankruptcy, as all subsequent proceedings must have that for a basis. This was not produced. This court held in *Joy* v. *Berdell*, 25 Ill. 537, if a deed from the assignee in bankruptcy had the requisite recitals, and a copy of the decree is produced, it will be conclusive on a trial in ejectment. To the same effect is the case of *Holbrook* v. *Coney et al.*, *Ib*. 543, and *Holbrook* v. *Brenner*, 31 *Ib*. 502.

There having been no decree shown, it is deemed unnecessary to notice the other points made by appellant. Perceiving no error in the record, the judgment is affirmed.

*Judgment affirmed.*